## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

In re:   FV-CBA LLC                                              Case No.  14-74295-FJS
                                                                Chapter 11

                        Debtor-in-Possession.

### NOTICE AND MOTION FOR AUTHORITY TO
### (i) ASSUME AND ASSIGN LEASES, (ii) EMPLOY AUCTION FIRM
### AND (iii) SELL REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,
### ENCUMBRANCES AND OTHER INTERESTS BY PUBLIC AUCTION IN
### <u>ACCORDANCE WITH THE AUCTION AGREEMENT APPROVED BY THE COURT</u>

**TO ALL CREDITORS AND PARTIES IN INTEREST:**  PLEASE TAKE NOTICE THAT
FV-CBA LLC (the "Debtor"), by counsel, as set forth below moves the Court for entry of an
order, pursuant to 11 U.S.C. §§363, 365 and Rules 2002, 4001, 6004, 6006 of the Federal Rules
of Bankruptcy Procedure and Local Rules 6004-1 and 6004-2 for authority to (i) assume and
assign leases, (ii) employ an auction firm and (iii) sell real property free and clear of liens,
claims, encumbrances and other interests by public auction in accordance with the Auction
Agreement Approved by the Court (the "Motion").

          **Your rights may be affected.  You should read of the Motion carefully and discuss it with
your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may
wish to consult one).**

          If you do not want the Court to grant the relief requested in the Motion, then you or your
attorney must file an objection to the Motion that must be received by the Clerk of the Bankruptcy
Court, U.S. Bankruptcy Court, 600 Granby Street, Room 400, Norfolk, Virginia 23510, **within
twenty-one (21) days after service of this Notice as specified in Rule 2002 of the Federal Rules
of Bankruptcy Procedure,** with a copy to counsel for Plaintiffs at the address set forth below.

          If you file a response, you must additionally attend a hearing to be scheduled at a later date.
If a hearing on the Motion is set or requested, you will receive a separate notice of the hearing.

          Under Local Bankruptcy Rule 9013-1(H)(3)(a), unless a written response to the Motion
and supporting memorandum are filed with the Clerk of Court and served on the moving parties
within 21 days of the date of service of this Notice, the Court may deem any opposition waived,
treat the Motion as conceded, and issue an order granting the requested relief without further
notice or hearing.

Ann B. Brogan, VSB No. 25567
Olga Antle, VSB No. 83153
CROWLEY, LIBERATORE, RYAN & BROGAN, P.C.
Town Point Center, Suite 300
150 Boush Street
Norfolk, Virginia 23510
Telephone - (757) 333-4500
Facsimile - (757) 333-4501
Counsel to FV-CBA LLC

## MOTION

FV-CBA LLC (the "Debtor" or "FV-CBA"), by counsel, moves the Court for authority to assume and assign its unexpired leases, employ Tranzon Fox as the Auction Firm and sell the Debtor's real property free and clear of liens, claims, encumbrances and other interests by public auction as described in this motion (the "Motion").  In support thereof, the Debtor states as follows:

### Jurisdiction

1.      On November 26, 2014 (the "Filing Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. A trustee has not been appointed and the Debtor remains in possession and control of its assets pursuant to 11 U.S.C. § 1107.

2.      Jurisdiction to consider this matter is vested in this Court pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

3.      The statutory predicates for the relief sought herein are 11 U.S.C. §§ 363, 365 and Rules 2002, 4001, 6004, 6006 of the Federal Rules of Bankruptcy Procedure and Local Rules 6004-1 and 6004-2.

### Debtor's Real Estate Ownership, Liens and Interests

4.      The Debtor was formed to acquire real property located at 324 Commerce Road in Farmville, Virginia ("Real Property"), build an office building of approximately 11,000 square feet ("Office Building") and lease it to the United States government (the "Government") for use by the Social Security Administration ("SSA") as the anchor tenant. A legal description of the Real Property is attached as Exhibit A.

5.      The Real Property is subject to the interest of Shenandoah Life Insurance Company ("SLIC") in a first priority deed of trust ("SLIC DOT") and an assignment of leases, rents and profits ("AOR"), which secure payment of two promissory notes each dated February 23, 2006, made by the Debtor and payable to SLIC ("Note A and Note B" or "Promissory Notes").  As of the

Filing Date, the outstanding principal balance on Note A was $179,227.48 and the outstanding principal balance on Note B was $30,519.61.  Pursuant to the SLIC DOT dated February 23, 2006, the Debtor, as grantor, conveyed the Real Property to C. Thomas Ebel and Douglas P. Rucker, Jr., as trustees for the benefit of SLIC, to secure the Debtor's obligations under the Promissory Notes. The SLIC DOT is recorded in  the Clerk's Office of the Circuit Court of Prince Edward County, VA ("Clerk's Office") as  Instrument No. 200600518.   The AOR dated February 23, 2006 , made  by the Debtor is recorded in the Clerk's Office as  Instrument No. 200600519.

6.     By lease dated March 11, 2004, as amended from time to time, and administered for the Government by the General Services Administration ("GSA"), the Debtor leased 7,031 square feet of space in the Office Building to the Government for use by the SSA  (the "GSA Lease").  The GSA Lease expires by its terms on September 30, 2015, and does not include a renewal option. Upon information and belief, and based on the personal experience of the Debtor's Managing Member, the Debtor anticipates that the GSA will request a short-term extension of the GSA Lease to permit the GSA and SSA sufficient time to determine whether the GSA will negotiate a replacement lease in accordance with its policies and procedures.

7.     By a General Commercial Lease dated July 18, 2007, the Debtor leased approximately 2,000 square feet of office space to Timothy W. Corbett, M.D. ("Corbett Lease"). The original term of the Corbett Lease expired on July 18, 2012, and has been renewed year-to-year pursuant to the renewal provision in the Lease.

8.     Approximately 18% of the Office Building has never been leased; however, rents have been sufficient to cover FV-CBA's debt service to SLIC and operating expenses.

9.     On October 12, 2010, Capital Lighting & Supply, Inc., ("Capital") recorded in the Clerk's office Instrument # 201001744, a document entitled "Supplemental Deed of Trust" ("Capital DOT") and dated September 20, 2010.  The Capital DOT was made by the Debtor, as

grantor to James D. Fullerton and Hyo H. Han, Trustees, and Capital Lighting, which was defined in the Capital DOT as "Lender."

<u>Factual History and Procedural Background</u>

10.    By agreements made as of June 30, 2013, between John E. Hall ("Former Member") and James K. Jolley ("Jolley"), the Former Member consented to the termination of his equity interests in the Debtor, resigned as Manager, and relinquished any and all interests in or claims against the Debtor.  The Former Member's forfeiture of his interests in the Debtor caused the company to become a "single member LLC" and be treated as of July 1, 2013, as a sole proprietorship for tax purposes on Jolley's returns.  Jolley is now the managing member and designated representative of the Debtor in this Case.

11.    Upon information and belief, after the receipt of the notice of the Chapter 7 bankruptcy filing by the Former Member, SLIC discovered the existence of Capital DOT in 2013.

12.    By letter dated November 21, 2013, SLIC notified the Debtor that the filing of the Capital DOT without SLIC's consent caused a default under the Promissory Notes and SLIC DOT.

13.    Disputes exist among and/or between the Debtor, Capital Lighting and Jolley regarding the validity, priority and/or extent of the Capital DOT.

14.    Despite extensive negotiations with SLIC and Capital Lighting, the Debtor was unable to resolve the issues created by the presence of the Capital DOT outside of bankruptcy.

15.    The Debtor explored the possibility of marketing and selling the Real Property. The Managing Member of the Debtor consulted with a broker familiar with the Real Property and similar properties. After evaluating the Real Property, the broker was unable to recommend a sales price or offer a marketing strategy given the uncertainty associated with the future of the GSA Lease. Without knowledge of the GSA's intentions regarding the GSA Lease, it was difficult to value the Real Property. The Debtor concluded that Chapter 11 of the Bankruptcy Code provided it

with the most certain and cost-effective method of resolving matters with SLIC and Capital Lighting.

16.     Shortly after the Filing Date, the Debtor filed a plan of liquidation (the "Plan") and a disclosure statement (the "Disclosure Statement"), and the Court set a hearing on the Disclosure Statement for January 21, 2015 (the "Hearing").

17.     The Debtor also filed the Notice and Motion for Authority to Use Cash Collateral ("Cash Collateral Motion"). Pursuant to 11 U.S.C. § 363(c)(2)(A), SLIC consented to the Debtor's limited use of cash collateral, subject to the terms of the Interim Cash Collateral Order entered by the Court on January 7, 2015.

18.     By objection filed January 13, 2015, Capital Lighting objected to this Court's approval of the Disclosure Statement.  Capital Lighting maintained that the Disclosure Statement could not be approved when the Plan could not be confirmed over the objection of Capital Lighting to the Debtor's proposed treatment of Capital Lighting's "distributional rights" under the Plan.

19.     At the Hearing, the Debtor withdrew the Plan and represented to the Court that the Debtor, SLIC, Capital Lighting and Jolley generally agreed that it was in the best interest of the Debtor, its estate ("Estate") and all parties in interest to sell the Real Property at a public auction (the "Auction") free and clear of any interest before proceeding to confirmation of a plan.

20.     The Debtor, Capital Lighting and Jolley agreed that the disputes regarding the Capital DOT shall be reserved for later resolution and nothing in this Motion or any Order regarding the Motion shall prejudice any arguments, positions or defenses regarding the validity, priority and/or extent of the Capital DOT or any claims related thereto.

21.     SLIC, Capital Lighting, and Jolley consent to the Debtor's sale of the Real Property pursuant to 11 U.S.C. § 363 free and clear of any lien or interest, as long as their interests in the Real Property attached to the proceeds of the sale in the order, priority, and extent they existed prior

to the sale and as further described below.  Capital Lighting's consent is further contingent upon the use of an agreeable auction procedure to sell the Real Property.  The procedure set forth in this Motion is agreeable to Capital Lighting.

<u>Requested Relief</u>

22.     The Debtor believes that the Auction as described herein will be fair and reasonable, encourage competitive bidding, and ensure the best outcome for the Debtor, the secured creditors and the Estate.

23.     By this Motion, the Debtor seeks authorization from this Court to (i) assume and assign the unexpired leases, (ii) sell the Real Property free and clear of liens, claims, encumbrances and other interests by public auction and (iii) employ an auctioneer to sell the Real Property at the Auction.

<u>Assumption and Assignment of Leases</u>

24.     In order to maximize the value of the Real Property and obtain the highest and best price at the Auction, the Debtor intends to assume the GSA Lease and the Corbitt Lease and assign them to the purchaser of the Real Property.

25.     Section 365(a) of the Bankruptcy Code authorizes a trustee, subject to the court's approval, to "assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). In a chapter 11 case, where no trustee has been appointed, a debtor, as debtor-in-possession has "all the rights … and shall perform all the functions and duties … of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a).

26.     An executory contract or unexpired lease may not be assumed when the debtor is in default unless the debtor takes the remedial steps specified in § 365(b)(1). Neither may a debtor assume an executory contract or unexpired lease if "applicable law excuses a party, other than the debtor such contract … from accepting performance from … an entity other than the debtor or the

debtor in possession [and] … such party does not consent to such assumption. 11 U.S.C. § 365(c)(1).

27.    The assignment of the executory contracts and unexpired leases is governed by 11 U.S.C. § 365(f)(2), which authorizes assignment if (A) the trustee assumes the contract or lease in accordance with § 365; and B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease. 11 U.S.C. § 365(f)(2).

28.    Both of the Debtor's leases are unexpired, and the Debtor is unaware of any default or pecuniary loss due to the defaults under either the GSA Lease or the Corbett Lease (collectively, the "Leases").

29.    The Debtor seeks to assume and assign the Leases to the purchaser of the Real Property and provide adequate assurance of future performance under the Leases.

30.    Upon information and belief, the GSA consents to the Debtor's assumption and assignment of the GSA Lease. The GSA Lease includes an attornment provision, which, in part, states that "in the event of any sale of the premises or any portion thereof … the Government will be deemed to have attorned to ay purchaser or purchasers … and any such purchasers will be deemed to have assumed all obligations of the Lessor under the lease."  The GSA Lease also states that the Contracting Officer for the GSA would have to execute revisions to the GSA Lease and other documents to properly document the foregoing relationship.

31.    The assumption and assignment of the Leases will help maximize the sale value of the Real Property, is in the best interest of the Estate and will not prejudice any creditor or party in interest.

32.    The Debtor requests that the order authorizing assignment be deemed effective immediately, upon its entry, by waiving the fourteen-day stay under the Bankruptcy Rule 6006(d).

<u>Authority to Sell the Real Property</u>

33.    Section 363(f) of the Bankruptcy Code permits the Debtor to sell property of the estate, free and clear of any interest or lien in such property of an entity other than the estate, if—

    a.    Applicable nonbankruptcy law permits sale of such property free and clear of such interests;

    b.    Such entity consents;

    c.    Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    d.    Such interest is in bona fide dispute; or

    e.    Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

34.    Section 363(f) of the Bankruptcy Code is stated in the disjunctive; if one of the requirements of § 363(f) is satisfied, the court may approve the sale.  See *In re Silver*, 338 B.R. 277, 280 (Bankr. E.D. Va. 2004) (citing *In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995)).

35.    SLIC, Capital Lighting and Jolley consent to the Debtor's sale of the Real Property free and clear of any lien or interest, as long as their interests in the Real Property attach to the proceeds of the sale in the order, priority, and extent they existed prior to the sale, at least one requirement of 11 U.S.C. § 363(f) has been met.  Capital Lighting's consent is further contingent upon the use of an agreeable auction procedure to sell the Real Property.  The procedure set forth in this Motion is agreeable to Capital Lighting.

36.    Rule 6004(f)(1) of the Bankruptcy Rules allows for the sale of property outside of the ordinary course of business by private sale or by public auction. Fed. R. Bankr. P. 6004(f)(1).

37.    In consultation with SLIC and Capital Lighting, the Debtor solicited and considered proposals from several professional auctioneers and compared them to the auction procedures proposed in the Plan. Based on discussions among representatives of the Debtor, SLIC, Capital

Lighting, and Jolley, the parties agreed that, upon approval of this Court, an Auction conducted by Tranzon Fox, a licensed Virginia auction firm, provides the best opportunity to sell the Real Property for the highest price relative to the expense of such sale.

38.    SLIC consents to the Auction on the condition that its claims against the Debtor are paid in full at closing.  Due to his liability to SLIC pursuant to the Indemnity and Guaranty Agreement (the "Guaranty") dated February 23, 2006, Jolley agrees to pay any deficiency to SLIC should the proceeds from the sale of the Real Property net of sale and prior liens be insufficient to pay off SLIC's claims in full.

39.    Good cause exists to sell the Real Property at the Auction to ensure that the Debtor obtains the highest and best price for the Real Property and maximizes its value to the Estate.

**Employment of Auction Firm and Approval of Auction Agreement**

40.    Pursuant to 11 U.S.C. §327(a), the Debtor seeks to employ Tranzon Fox ("Tranzon") as the auctioneer to conduct the Auction and sell the Real Property. Tranzon is well-qualified to perform such services because of its experience in marketing and selling commercial properties.

41.    The Debtor and Tranzon have agreed to sell the Real Property pursuant to the terms of the following proposed agreements ("Sale Agreements"), subject to the approval of this Court of the form of the Sale Agreements:

    a.    Listing Agreement for Real Estate Auction ("Auction Agreement") attached hereto as Exhibit B;

    b.    Terms and Conditions of the Auction Sale ("Auction Terms") attached hereto as Exhibit C;

    c.    Proposed Advertising Expense Budget ("Advertising Budget"), attached hereto as Exhibit D;

d.  Contract for Sale of Real Estate ("Purchase Agreement"), attached hereto as Exhibit E, for execution.

42.  Subject to the approval of this Court and as detailed in the Sale Agreements, Tranzon and the Debtor have agreed that—

a.  Tranzon will charge a Buyer's Premium of ten percent (10%) which will be added to the high bid and included in the total purchase price paid by the buyer to the Debtor;

b.  Tranzon's compensation shall be a fee of ten percent (10%) of the high bid, payable at closing;

c.  The successful bidder will be required to execute the Purchase Agreement at the conclusion of the Auction;

d.  In the event that SLIC, Capital Lighting or Jolley (each an "Interested Party") is the successful bidder, Tranzon's compensation shall be limited to a fee of five percent (5%) of the high bid, payable at closing, and such Interested Party shall receive a credit to the purchase price of half the Buyer's Premium; and

e.  No compensation is due Tranzon if the sale does not close through no fault of the Debtor.

43.  The Declaration of William Londrey is attached hereto as Exhibit F. No shareholder, member or associate of Tranzon holds or represents any interests actually adverse to those of the Debtor or its estate with respect to the matters upon which Tranzon is to be engaged.

44.  The Advertising Budget shall be the baseline for the scope of the advertising and marketing of the Auction. The Debtor shall retain the discretion to increase or expand the scope upon notice to representatives for the Interested Parties.

45.  Pursuant to 11 U.S.C. § 363(k), if a holder of any claim secured by a lien on the Real Property bids at the Auction and purchases the Real Property, such holder may offset such claim

against the purchase price of the Real Property.  The Debtor and the Interested Parties agree that only SLIC shall have the right to credit bid the amount of its claims at the Auction up to the full outstanding balance due on the Promissory Notes.

### Closing and Disposition of Sales Proceeds

46.     The Debtor shall use its best efforts to obtain confirmation of this Court's approval of the sale of the Property within three (3) business days after the conclusion of the Auction. Settlement will take place no later than 45 days after entry of the Court order approving the sale on the docket for the Case**.**

47.     If for any reason, the highest bidder at the Auction does not close on the sale, the Real Property shall be offered to the higher of (a) the bid by the next highest bidder at the price of such bidder's highest bid or (b) to Jolley at the amount equal to the costs of sale and administrative expenses associated with the Auction, as well as the balance on the Promissory Notes, including any unpaid principal, accrued interest, and all other applicable fees, costs and charges. Any earnest money the Debtor receives as a result of a bidder's default on the purchase of the Real Property will be applied to costs associated with the Auction or other administrative expenses of the Debtor. Upon closing on the sale of the Real Property, the proceeds shall be applied in the following manner:

- First, to the costs of sale, including customary sales and closing expenses as itemized on a settlement statement for the sale of commercial real property that itemizes the receipt and allocation of the proceeds from the sale ("Settlement Statement"), such as payment or reimbursement of sales commissions, marketing and promotional expenses associated with the Auction, and seller's attorneys' fees as described in paragraph 48 of this Motion;

- Second, to any unpaid real property taxes due on the Real Property through the date of closing;

- Third, to SLIC up to the full amount of SLIC's claims, including any unpaid principal, accrued interest, and all other applicable fees, costs and charges.

48.     No later than three business days prior to closing, a draft of the Settlement Statement shall be circulated to representatives of the buyer, the Debtor, Tranzon and the Interested Parties (each a "Party").  Any attorneys' fees for the seller shall be limited to those attorneys' fees incurred by the Debtor after this Court confirms its approval of the sale and are related only to the sale and closing of the Real Property. No proceeds may be disbursed without the written acknowledgment of all the Parties to the disbursements reflected in the Settlement Statement, unless the Parties agree that certain funds shall be held in escrow, subject to resolution of any dispute or further Order of this Court, as appropriate.

49.     The Debtor will hold the remaining balance of the proceeds, if any, in escrow subject to the determination of the validity, priority, and extent of interests of Capital Lighting and/or Jolley as of the Filing Date. Nothing herein is intended to constitute a waiver by any party of any legal or factual argument on the issue of the validity, priority, or extent of liens.

50.     Within ten (10) days after closing on the sale, the Debtor shall file a report of sale with the Court advising of the closing and including a copy of the Settlement Statement showing the receipt and allocation of the proceeds from the sale. The report will include the credit bid amount, if any, and any amount credited to the creditor's interest.

51.     If appropriate, the Debtor will file an Adversary Proceeding to determine the extent, priority and validity of Capital Lighting's and Jolley's interests in the remaining proceeds pursuant to 11 U.S.C. § 506 should the sale proceeds exceed the value of other interests in the Real Property.

WHEREFORE, FV-CBA LLC respectfully requests that the Court enter an Order granting

the Debtor authority to (i) assume and assign the unexpired leases on the Real Property; (ii) employ

Tranzon Fox as the Auction Firm; and (iii) sell the Real Property free and clear of liens, claims,

encumbrances, and other interests by public auction; and such other relief as the Court deems just

and proper.

Dated:  March 17, 2015                    FV-CBA LLC


                                          By: /s/  Ann B. Brogan
                                                  Of Counsel


Ann B. Brogan, VSB No. 25567
Olga Antle, VSB No. 83153
Crowley, Liberatore, Ryan & Brogan, P.C.
150 Boush Street, Suite 300
Norfolk, Virginia 23510
(757) 333-4500
Counsel to FV-CBA LLC

### CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2015, true copies of the foregoing Notice of Motion and Motion were served via electronic delivery to those individuals/entities on the Court's electronic database for this case, as well as to the following:

> Tranzon Fox, attn. of:
> William Londrey - blondrey@tranzon.com;
> Jeffrey Stein - jstein@tranzon.com.

I hereby certify that true copies of the foregoing Notice of Motion and Motion were also sent by first class, postage pre-paid mail to all creditors and parties in interest as reflected on the attached Mailing Matrix.

/s/  *Ann B. Brogan*